**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DANA DECEMBER SMITH,

        Plaintiff,

v.                           CIVIL ACTION NO. 2:09-cv-00242

DAVID BALLARD,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

This petition for habeas corpus relief under 28 U.S.C. § 2254 was filed on March 18, 2009. The petition was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to this court of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The respondent then filed a motion for summary judgment [Docket 39]. The Magistrate Judge has submitted findings of fact and has recommended that the court deny the habeas petition [Docket 78].

Thereafter, the petitioner filed timely Specific Objections to the Proposed Findings and Recommendation [Docket 85]. The court has reviewed *de novo* those portions of the Proposed Findings and Recommendation to which the petitioner has filed specific objections. For the reasons set forth below, the court **FINDS** that the petitioner's objections lack merit. The petitioner has also filed Objections to the Magistrate Judge's Order Denying Disqualification [Docket 82] and Objections to the Magistrate Judge's Order Denying Appointment of New Counsel [Docket 83]. The court also **FINDS** that these objections lack merit and has satisfied itself that there is no other

clear error on the face of the record. Accordingly, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation, **GRANTS** the respondent's Motion for Summary Judgment [Docket 39], and **ORDERS** that the petition for writ of habeas corpus be dismissed and stricken from the docket of this court [Docket 1].

**I.    Background**

After *de novo* review of those portions of the Magistrate Judge's report to which objections were filed, the court **ADOPTS** the statement of facts and procedural history set forth in the Proposed Findings and Recommendations. The detailed account provided by the Magistrate Judge therein requires only a brief summary here.

A.    *State Conviction*

On September 7, 1991, the petitioner, Dana December Smith, was involved in a single-vehicle accident on Cabin Creek Road in Kanawha County, West Virginia. The petitioner hitchhiked from the scene of the accident and was dropped off near the town of Leewood, West Virginia. Forty-eight hours later, on September 9, 1991, the bodies of Margaret McClain and her daughter, Pamela Castaneda, were found in their Leewood home. The victims had been stabbed multiple times and died from those wounds. The victims' white Ford Taurus station wagon and a VCR were missing from their home. The next day, the State Police located the station wagon in Logan County, West Virginia.

The petitioner was arrested in connection with the single-car accident on September 11, 1991, and the police took hair and blood samples from the petitioner upon his arrest. Five days later, on September 16, 1991, the petitioner was charged with murdering McClain and Castaneda. In January 1992, the petitioner was indicted by a grand jury in Kanawha County for the victims'

murders, aggravated robbery of the victims' property, and first-degree sexual assault. During his lengthy jury trial, a number of witnesses provided damning testimony against the petitioner. A friend of the petitioner placed the petitioner one quarter of a mile away from the crime scene on the day of the murders, and the witness further testified that he had observed the petitioner wearing camouflage pants, a military belt with a knife, and a canteen. A canteen was recovered inside the victims' residence. Two Leewood residents testified that a man wearing camouflage, a knife, and a canteen walked past their homes on September 7, 1991. Other witnesses testified that the victims' car was at the home during the late afternoon of September 7, but that it was gone by evening.

The state then offered evidence linking the petitioner to the victims' car and VCR. A friend of the petitioner testified that the petitioner – driving a light-colored car, wearing camouflage, and with cuts and scrapes on his body – arrived at her home in Boone County (which is adjacent to Logan County) on the evening of September 7, 1991. She further testified that three days later the petitioner called her and told her to tell the police that he had hitchhiked to her house over the weekend and had stayed there. Yet another friend of the petitioner testified that he drove to her house in Boone County on September 7 in a white Ford Taurus station wagon. She testified that he was wearing camouflage, was bleeding from cuts and scratches, and was wearing a white t-shirt with a teddy bear on it, which he left at her house. A fourth friend of the petitioner testified that he drove to her home in Boone County on the morning of September 8 in a white Ford Taurus station wagon. She further testified that the petitioner left a VCR, a CB radio, and a walkman at her house. The state then presented testimony linking the VCR, the walkman, and the white teddy bear t-shirt to the victims.

In addition, the state presented forensic evidence linking the teddy bear t-shirt left at the friend's house to the crime scene. A DNA analyst with the FBI testified that she had examined two bloodstains on the t-shirt. One of the bloodstains was consistent with the petitioner, with a random match probability of one in twenty-five persons. Another bloodstain on the t-shirt was consistent with Castaneda, with a random match probability of one in 55,200. Finally, the State Medical Examiner testified that there was nothing inconsistent with a time of death between 5:00 and 6:00 p.m. on September 7, 1991.

On December 30, 1992, the jury found the petitioner guilty of two counts of first-degree murder, with no recommendation of mercy. The jury found the petitioner guilty on a felony murder theory based on the aggravated robbery charges, but it made no finding on the sexual assault charges. On January 28, 1993, the petitioner was sentenced to two terms of life imprisonment in the state penitentiary without the possibility of parole. On April 5, 1994, the petitioner, through counsel, filed a petition for appeal with the Supreme Court of Appeals of West Virginia. The petition was refused on September 9, 1994.

      B.    *State Habeas*

Following his unsuccessful petition for appeal, the petitioner pursued habeas relief in the state courts. He filed his initial habeas petition in the Circuit Court of Kanawha County in February 1995, a second petition in February 1997, an amended petition, filed by retained counsel, in June 2004, and an amended *pro se* petition in July 2003. On January 20, 2004, the Circuit Court appointed the Kanawha County public defender to represent the petitioner. Thereafter, on January 17 and 18, 2006, the Circuit Court conducted an evidentiary hearing.

The evidentiary hearing primarily focused on a death row inmate's confession to the murders after the petitioner was convicted. The inmate, named Tommy Lynn Sells, was convicted for murder and sentenced to death in Texas in 1999. After his conviction and sentence, Sells began confessing to a number of homicides around the country. During an interview with the Texas Rangers on April 12, 2000, Sells discussed a double homicide in Cabin Creek, West Virginia. Sells explained that the victims were a mother and a daughter, and that he had met the daughter at a nearby bar and then stayed in the victims' upstairs attic for a few days before murdering them. Sells stated that the victims owned a white Ford Taurus, but he claimed that he had left their home on foot after committing the murder, thus leaving the car parked outside.

On September 29, 2004, Sells participated in a deposition from death row in Texas. He explained that he had spent three days living in the victims' attic, which he described as apartment-like, including a bathroom. Sells testified that after he murdered the victims, he carefully cleaned up the crime scene and that he stole a CB radio from the victims' residence. Finally, Sells testified that the victims had a small or medium dog, which he had left unharmed. The Circuit Court found that Sells' confession was implausible. Namely, a family member had testified that the upstairs of the victims' home was merely an attic and that it did not have a bathroom. The evidence log from the petitioner's trial had described a photograph of an upstairs bedroom and bathroom, but that photograph was misidentified, as it was actually of the downstairs bedroom and bathroom. Sells' claim that he stole the victims' CB radio was also contradicted by the evidence, as the CB radio was included among the property that the petitioner left with a friend of his in Boone County. Furthermore, Sells' testimony that he had carefully cleaned the crime scene was contrary to the evidence, as an empty gauze wrapper, blood-stained gauze, and a canteen were all left behind.

Moreover, Sells' testimony concerning the victims' dog was inconsistent with the evidence, as one of the victims' dogs had been killed and stuffed in the laundry room. In sum, the Circuit Court found that Sells' testimony was inconsistent with the evidence and eyewitness testimony presented at the petitioner's trial. In addition to Sells' testimony, there was testimony at the evidentiary hearing that the petitioner and Sells had been incarcerated together, both at the Kanawha County Jail and at the state penitentiary, although Sells denied that he talked with the petitioner. Finally, a woman who wrote a biography of Sells testified that she had interviewed Sells on November 6, 2001 about the double-homicide in West Virginia. She testified that Sells had told her that the right person was behind bars, whom he referred to as "Damien Smith." She further testified that Sells had said that the petitioner had someone else write to Sells about the murders.

On September 17, 2007, the Circuit Court denied the habeas petition by way of an order in which it summarized the evidence presented at the evidentiary hearing and then set forth its findings of fact and conclusions of law. In sum, the Circuit Court found that "[b]ased on the implausibility of Tommy Lynn Sells' confession, as well as the lack of integrity of the confession, this Court does not believe that there is [any] evidence . . . that would produce an opposite result on the merits." (Proposed Findings and Recommendation, [Docket 78], at 28.) On March 12, 2009, following extensive briefing and oral argument, the Supreme Court of Appeals of West Virginia issued an opinion in which it concluded that the petitioner was not entitled to state habeas relief. *See State ex rel. Smith v. McBride*, 681 S.E.2d 81 (W. Va. 2009). The Supreme Court of Appeals agreed with the Circuit Court that "Sells' confession lacked credibility." *Id.* at 93. Moreover, the court concluded that the "evidence introduced against Mr. Smith during his trial established beyond a reasonable doubt that he killed the victims." *Id.* at 95.

C.  *Federal Habeas*

On March 18, 2009, the petitioner filed the instant Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 [Docket 1].  He asserts ten specific grounds for habeas relief, which are discussed in detail below.  On November 23, 2009, the respondent filed a Motion for Summary Judgment [Docket 39].  Following rulings on a number of various non-dispositive motions, the Magistrate Judge submitted her Proposed Findings and Recommendation [Docket 78] to the court on August 24, 2010.  The petitioner has filed timely Specific Objections to the Proposed Findings and Recommendation [Docket 85].  The matter is now ripe for review.

**II.   Standard of Review**

A.  *Federal Habeas*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ( the "AEDPA") governs all federal habeas corpus petitions filed after April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Moreover, the AEDPA requires a federal habeas court to presume that a state court's factual findings are correct.  *See* 28 U.S.C. § 2254(e).  And a habeas petitioner can only overcome that presumption of correctness by submitting clear and convincing evidence.  *Id.*

State prisoners seeking relief under § 2254 must overcome "several procedural obstacles." *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009). Of utmost importance here is that state prisoners must exhaust their available remedies in state court before filing a § 2254 petition. *See* 28 U.S.C. § 2254(b)(1)(A). A state prisoner bears the burden of proving that his claims were fairly presented in state court. *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). To be fairly presented, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (internal quotation marks omitted). If the claims were not fairly presented in state court, they are procedurally defaulted and a federal habeas court is generally barred from adjudicating them. *Id.* A § 2254 petitioner can overcome a procedural default only by showing cause for the default and prejudice resulting from the error or by establishing that his conviction and sentence constitutes "a miscarriage of justice." *Id.*

The miscarriage of justice showing requires the habeas petitioner to make a showing of "actual innocence," as delineated by the Supreme Court in *Schlup v. Delo*, 513 U.S. 298, 327 (1995). An actual innocence showing under *Schlup* does not on its own entitle the petitioner to habeas relief, but, rather, serves as a "gateway" for the petitioner to obtain review of otherwise procedurally defaulted constitutional claims. *See Wolfe*, 565 F.3d at 164. Under *Schlup*, the petitioner must show, in light of "new reliable evidence," that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." 513 U.S. 327-29. In determining whether this standard has been met, the federal habeas court must assess the credibility of the new evidence, *id.* at 332, and it must weigh that evidence against the record as a whole, *House v. Bell*, 547 U.S. 518, 560 (2006) ("[T]he habeas court must consider all the evidence, old and new,

incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern it at trial." (internal quotation marks omitted)).

      B.     *Magistrate Judge's Recommendations*

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When a party files an objection that is too general or conclusory to focus attention on any specific error supposedly committed by the Magistrate Judge, the court need not conduct a *de novo* review. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Moreover, when a party fails to object to a portion of the Magistrate Judge's report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Diamond*, 416 F.3d at 315.

When a Magistrate Judge hears and rules on a non-dispositive pretrial matter in a case, a party may object to that determination within fourteen days after being served with a copy of the decision. Fed. R. Civ. P. 72(a). The district judge in the case must consider timely objections and "may modify or set aside any portion of a magistrate judge's non-dispositive ruling 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'" *Berman v. Congressional Towers Ltd. P'ship-Section I*, 325 F. Supp. 2d 590, 592 (D. Md. 2004) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a).

      C.     *Summary Judgment*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.

R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256.

## III. Discussion

### A. *Respondent's Motion for Summary Judgment*

#### 1. Procedural Default

In her report, the Magistrate Judge recommends that the court award summary judgment to the respondent because several of the petitioner's grounds for federal habeas were procedurally defaulted in the state courts. According to the Magistrate Judge, the petitioner failed to fairly present seven of his ten grounds for habeas relief – grounds three, four, five, six, eight, nine, and ten – on direct appeal or in the state habeas proceedings.[1]

The petitioner objects to the Magistrate Judge's proposed finding that he failed to exhaust his state remedies with respect to those seven grounds for habeas relief. Having reviewed this

---

[1] As to one of those procedurally defaulted grounds – ground six, relating to the admission at trial of expert testimony concerning DNA probability projections – the Magistrate Judge observed that, although the petitioner challenged the admissibility of that testimony on direct appeal, his challenge solely concerned the admissibility of the evidence under West Virginia's evidentiary rules. The petitioner's current constitutional claim with regard to the expert testimony, by contrast, is predicated on the U.S. Constitution. Because that claim was not fairly presented to the state courts, it was procedurally defaulted.

portion of the Proposed Findings and Recommendation *de novo*, the court **FINDS** that grounds three, four, five, six, eight, nine, and ten of the habeas petition were not raised by the petitioner in his direct appeal or in his state habeas appeal petition, and thus are procedurally defaulted.[2] The Magistrate Judge has painstakingly documented the grounds for relief pressed by the petitioner during the habeas evidentiary hearing before the Circuit Court, during arguments before the Circuit Court after that hearing, during yet another hearing before the Circuit Court, and in the petitioner's petition for appeal to the Supreme Court of Appeals of West Virginia. During those state proceedings, the petitioner only exhausted grounds one and two of his federal habeas petition. Accordingly, the courts **FINDS** that the petitioner has procedurally defaulted the other grounds for habeas relief.

    2.    Actual Innocence

The Magistrate Judge's Proposed Finding and Recommendation turns next to the *Schlup* gateway showing of "actual innocence," which would entitle the petitioner to have his procedural default overlooked by the court so that his defaulted claims could be adjudicated on their merits. In determining whether new reliable evidence supports the petitioner's claim of actual innocence, the Magistrate Judge describes the incredibility of the Sells' confession as follows:

> The mistakes made by Tommy Lynn Sells in his confession render it incredible, especially in light of the record as a whole. Petitioner's repeated

---

[2] In attempting to avoid the procedural default, the petitioner makes much of the fact that his conviction and *state* habeas petitions were filed before the effective date of AEDPA. This argument is a red herring. First, AEDPA applies to all federal petitions filed after its effective date, and there is no question that the instant petition falls in that category. *See Evans v. Chavis*, 546 U.S. 189, 195 (2006) (applying AEDPA even where state habeas petition was filed before AEDPA's effective date). Second, any concerns with the retroactivity of AEDPA would be rendered moot because the procedural default rule, which is simply an outgrowth of the adequate and independent state grounds doctrine, preexisted AEDPA. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

> argument that the crime scene fit Sells' modus operandi of cleaning up the crime scene is contradicted by the fact that the bloody gauze and the canteen were found in the house. Furthermore, given Petitioner's admission that he stole the victims' car on the evening of Saturday, September 7, 1991, the fact that the car was not hot-wired and that the keys were usually kept on a nail in the kitchen door, the fact that Petitioner was found to be in possession of personal items known to be inside the victims' home, and the fact that Petitioner repeatedly changed his story about how he came into possession of both the victims' car and their personal property, it is unlikely that a reasonable juror would have believed that Tommy Lynn Sells met Pamela Castaneda and came home with her in the white Ford Taurus (that Petitioner had already stolen) sometime between Saturday night, September 7, 1991, and Monday, September 9, 1991, when the bodies were found, and that he stayed in the attic for two to three days, undetected by Ms. McClain. Further, it is unlikely that a reasonable juror would find that, in that two or three day time period, either Sells or Ms. Castaneda left the house and sold a television set that belonged to the victims, in order to obtain money to pay for drugs that Sells had provided to Ms. Castaneda. Finally, it is unlikely that a reasonable juror would believe that Sells left the house with the same CB radio that Petitioner was known to have possessed on September 7, 1991.

(Proposed Findings and Recommendation, [Docket 78] at 75-76.) Consequently, the Magistrate Judge recommends that the court find that, even in light of Sells' confession, the petitioner has failed to demonstrate that it is more likely than not than no reasonable juror would find him guilty beyond a reasonable doubt.

The petitioner devotes the bulk of his objections to this issue, contending that he has indeed satisfied *Schlup*'s actual innocence standard. For several pages, the petitioner recites the corroborating details in the record that support Sells' confession, as well as the implausibility of any coordinated fabrication effort or of any recantation by Sells. Having reviewed this portion of the Proposed Findings and Recommendation *de novo*, the court **FINDS** that the petitioner has not provided new, reliable evidence, in light of the record as a whole, to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. The court accepts all of the failings outlined by the Magistrate Judge with respect to Sells' confession.

The petitioner is most concerned with three bases offered by the respondent for countering Sells' confession: that certain details contained in Sells' confession did not actually match up with the crime scene,[3] that Sells was fed information in order to fabricate his confession, and that Sells later recanted his confession. Setting aside those issues completely, as the Magistrate Judge did in the passage quoted above, Sells' confession nevertheless lacks credibility. It simply does not align with the timeline established by the witnesses at trial and it is belied by the witnesses' testimony as to the location of the victims' personal property after the murders occurred. In sum, the court **FINDS** that Sells' confession is sufficiently incredible such that the petitioner has failed to show that it is more likely than not that no reasonable juror – having heard Sells' confession – would convict the petitioner. The state court's denial of habeas relief to the petitioner on the basis of Sells' confession was thus not contrary to, nor based on an unreasonable determination of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the court **FINDS** that the respondent is entitled to judgment as a matter of law on the procedurally defaulted grounds of the habeas petition.[4]

### 3. Claims Not Cognizable in Federal Habeas

The Magistrate Judge suggests that the remaining grounds for relief asserted in the petitioner's federal habeas petition are not cognizable in federal habeas. In ground seven, for

---

[3] The four alleged errors in Sells' confession concerned the presence of a black afghan inside in the victims' home, whether or not there was an upstairs bathroom, and what happened to the victims' dogs.

[4] In his objections, the petitioner attempts to separately address the merits of each of the specific claims for relief asserted in his federal habeas petition. As discussed above, these grounds were procedurally defaulted. Because the petitioner has not satisfied the *Schlup* gateway standard of actual innocence, he is not entitled to an adjudication on the merits with regard to those claims.

-13-

instance, the petitioner asserts that he is entitled to the benefit of the exclusionary rule because his blood sample was collected in connection with an arrest that contravened the Fourth Amendment to the U.S. Constitution. The petitioner initially moved to suppress this physical evidence before trial. At a pretrial motions hearing, however, the petitioner's counsel elected not to pursue the motion to suppress and counsel did not contest the admissibility of the evidence on Fourth Amendment grounds at trial. Because he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, that claim is not cognizable in federal habeas proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Sallie v. North Carolina*, 587 F.2d 636, 639 (4th Cir. 1978). Because the petitioner has failed to offer any specific reason why that should not be the case, the court **FINDS** that the petitioner's Fourth Amendment claim is not cognizable in this federal habeas proceeding.

The petitioner's remaining objections to the Proposed Findings and Recommendation primarily attack the Magistrate Judge's description of the facts presented at trial and in the state habeas proceedings. In relaying the facts in her Proposed Findings and Recommendation, however, the Magistrate Judge recited verbatim the state habeas court's findings of fact. Under the AEDPA, such state-court findings are entitled to extraordinary deference. *See* 28 U.S.C. § 2254(e) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). In short, the petitioner has not come close to rebutting the presumed correctness of the factual findings underpinning the resolution of his habeas claims.

Finally, to the extent that the petitioner's Specific Objections to the Proposed Findings and Recommendation can be construed as presenting any other objection, the court **FINDS** that they are

general and conclusory and that the court need not conduct a *de novo* review.[5] *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Instead, the court has satisfied itself that there is no clear error on the face of the record. In sum, the court **FINDS** that the respondent is entitled to judgment as a matter of law on the habeas petition.

B. *Petitioner's Objections to Non-Dispositive Rulings*

The court has reviewed the petitioner's objections to the non-dispositive rulings made by the Magistrate Judge and concludes that they lack merit. First, the petitioner maintains that the Magistrate Judge should have disqualified herself from the petitioner's case, chiefly because of her rulings on other non-dispositive matters and because of her exposure to certain privileged documents during *in camera* review. For the reasons stated by the Magistrate Judge, neither of these grounds are sufficient to require disqualification, and thus the Magistrate Judge's denial of the disqualification motion was not contrary to law. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

Second, the petitioner asserts that the Magistrate Judge erred in refusing to appoint replacement counsel after granting the Federal Public Defender's motion to withdraw. For the reasons stated by the Magistrate Judge in denying the petitioner's repeated requests for appointed

---

[5] More specifically, the petitioner has not lodged any specific objection to the Magistrate Judge's determination that the remaining two grounds set forth in his federal habeas petition – his separate *Schlup* claim in ground one and his claim based on the supposed recantation of Sells' confession in ground two – are not cognizable in federal habeas. The court has reviewed those portions of the Proposed Findings and Recommendation and has not found any clear error on the face of the record

counsel, the Magistrate Judge did not act contrary to law in refusing to appoint replacement counsel for the petitioner. Put simply, there is no federal constitutional right to counsel during federal habeas proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and neither the statute providing for appointment of counsel for indigent habeas petitioners nor the rules governing habeas proceedings require the appointment of counsel in these circumstances, *see* 18 U.S.C. § 3006A(a)(2)(B); *see also* Rules 6(a) and 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts. Accordingly, the court **FINDS** that these objections lack merit and has satisfied itself that there is no other clear error on the face of the record.

### IV.  Conclusion

For the foregoing reasons, the court **ADOPTS** and incorporates herein the Proposed Findings and Recommendation of the Magistrate Judge [Docket 78], **GRANTS** the respondent's Motion for Summary Judgment [Docket 39], and **ORDERS** that the habeas petition [Docket 1] be **DISMISSED** and **STRICKEN** from the docket**.**

The court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to Magistrate Judge Stanley, counsel of record, and any unrepresented party.

ENTER: September 29, 2010

_Joseph R. Goodwin_
Joseph R. Goodwin, Chief Judge